## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Howard R. Tallman

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| **CHARLES WESLEY BUTCHER and** | ) | **Case No. 11-10545 HRT** |
| **WHITNEY SIMONE BUTCHER,** | ) | |
| | ) | **Chapter 13** |
| **Debtors.** | ) | |
| | ) | |

## ORDER DENYING PLAN CONFIRMATION

This case comes before the Court on Debtors' *Chapter 13 Plan* (docket #2) (the "Plan"). The case presents the issue of whether the Court may deny confirmation of the Debtors' chapter 13 plan on account of their failure to propose a plan in accordance with the district's Local Rules. More specifically, the question before the Court is whether a debtor's plan is confirmable if it disregards Local Bankruptcy Rule 3015-1(b)(1) and strikes Section VIII of Local Bankruptcy Form 3015-1.1, which requires debtors to modify their plan post-confirmation to provide for timely filed priority and secured claims that were not filed or litigated at the time of plan confirmation. The Court must address the Debtors' claim that the Court has exceeded its rule-making authority and, as part of that analysis, the Court must also examine whether the Debtor's plan complies with the requirements of the Bankruptcy Code and applicable procedural rules.

## I.  BACKGROUND

At the initial confirmation hearing held on March 17, 2011, the Court discussed with Debtors' counsel the fact that Debtors' Plan is not in compliance with this district's Local Bankruptcy Rules ("L.B.R." or "Local Rules"). The Debtor's Plan marks Section VIII of the district's form Chapter 13 Plan ("Form Plan")[1] as "not applicable." Thus, it violates the district's rule that a debtor's proposed chapter 13 plan "must conform to L.B. Form 3015-1.1[2] and it may not be confirmed.

To examine this question and more fully evaluate the Debtors' position, the Court scheduled a confirmation hearing for June 16, 2011. The Court gave the Debtors an opportunity to file a brief and to present oral argument.

Debtors  make a number of arguments in support of their position that they may disregard the Court's L.B.R. 3015-1(b)(1):

---

[1] L.B. Form 3015-1.1.

[2]  L.B.R. 3015-1(b)(1).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

      1.     The Court has exceeded its rule-making authority in violation of 28 U.S.C. § 2071 and FED. R. BANKR. P. 9029.

Debtors object specifically to Section VIII of the Form Plan.  That section commits a debtor to modify a confirmed plan if necessary to make payment under the plan consistent with timely filed allowed claims that are filed after confirmation of the debtor's plan.  Debtors argue that Section VIII violates substantive rights granted to them by statute and exceeds the Court's rule-making authority.

      2.     The language in Section VIII violates 11 U.S.C. § 1329.

Section 1329 is the section of the Bankruptcy Code that provides for modification of a confirmed chapter 13 bankruptcy plan.  Debtors argue that § 1329(a) allows only the debtor, the trustee or an unsecured creditor – but not the Court – to seek modification of a confirmed chapter 13 plan.  Therefore, the Form Plan violates § 1329(a) because it is tantamount to the Court moving for a post-confirmation modification of the Debtors' confirmed plan.

      3.     The language in Section VIII violates the *res judicata* effect of a confirmed chapter 13 plan under 11 U.S.C. § 1327.

Debtors argue that the binding effect of a confirmed chapter 13 plan under § 1327(a) overrides the claim filing, objection and allowance process set out in §§ 501 and 502 and in the Federal Rules of Bankruptcy Procedure.

## II.  DISCUSSION

A.  Controlling Statutes and Rules

The claim allowance and plan confirmation processes in chapter 13 practice implicate a number of different Bankruptcy Code sections and provisions of the Federal Rules of Bankruptcy Procedure (the "Rules"):

      1.     11 U.S.C. § 1322.  This section contains a list of provisions that *must* be contained in a chapter 13 plan[3].  It also lists provisions that *may* appear in a chapter 13 plan.[4]  Among the key provisions that are relevant here are § 1322(b)(2), which  prohibits a debtor from modifying the rights of a creditor who holds a security interest in the debtor's principal residence, and § 1322(e),

---

[3] 11 U.S.C. § 1322(a).

[4] 11 U.S.C. § 1322(b).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

which requires a plan proposing to cure a default to provide for payment of a cure amount determined under the underlying agreement and nonbankruptcy law.

2.  11 U.S.C. § 1324(b) requires chapter 13 confirmation hearings to be held between 20 and 45 days after the § 341 meeting date.  It gives the Court discretion to hold the confirmation hearing sooner but not later.  Those time frames were added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[5]  The apparent policy reflected in that amendment is to insure a speedy chapter 13 plan confirmation.[6]

3.  11 U.S.C. § 1325.  This section contains the requirements for confirmation of a proposed chapter 13 plan.  Among the other, more specific requirements, a chapter 13 plan must comply with the provisions of chapter 13 and with other applicable provisions of the Bankruptcy Code.[7]  In addition, the plan must have "been proposed in good faith and not by any means forbidden by law."[8]  The Supreme Court has stated that § 1325(a) places an independent duty on the court to "address and correct a defect in a debtor's proposed plan *even if no creditor raises the issue*."[9]

4.  11 U.S.C. § 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

5.  11 U.S.C. § 1328 provides generally for discharge of "all debts provided for by the plan or disallowed under section 502 . . . ."  A notable exception to discharge is a long-term debt provided for under § 1322(b)(5).  Most real-property mortgages fall under this exception to discharge.

---

[5] Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

[6] *In re Williams*, 385 B.R. 468, 473 (Bankr. S.D. Ga. 2008) ("BAPCPA has accelerated confirmation of chapter 13 cases"); *In re Gonzalez*, 372 B.R. 837, 842 (Bankr. W.D. Tex. 2007) ("2005 amendments . . . mandate early confirmation").

[7] 11 U.S.C. § 1325(a)(1).

[8] 11 U.S.C. § 1325(a)(3).

[9] *United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1381 n.14 (2010) (emphasis added).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

6.     11 U.S.C. § 502 provides that a claim filed by a creditor is presumed allowed unless the debtor or other party in interest objects to the claim and the Court sustains the objection.  It also sets the standards for the Court's allowance or disallowance of a claim as to which an objection is filed.

7.     FED. R. BANKR. P. 3002(c) provides that a proof of claim is timely if filed within 90 days after the first date set for the § 341 meeting of creditors but that governmental entities are allowed up to 180 days from the date of the order for relief.

8.     FED. R. BANKR. P. 9006(c)(2) provides that "[t]he court may not reduce the time for taking action under Rule[] . . . 3002(c) . . . ."

9.     FED. R. BANKR. P. 3007 provides the procedure for filing objections to proofs of claim and for the adjudication of those objections.

## B.  Section VIII Language

Section VIII of the district's Form Plan is the language the Debtors find objectionable.  It states as follows:

> **POST-CONFIRMATION MODIFICATION**.  The debtor must file and serve upon all parties in interest a modified plan which will provide for allowed priority and allowed secured claims which were not filed and/or liquidated at the time of confirmation. The value of property to satisfy 11 U.S.C. § 1325(a)(4) may be increased or reduced with the modification if appropriate. The modification will be filed no later than one year after the petition date. Failure of the debtor to file the modification may be grounds for dismissal.

As will be discussed in more detail, Section VIII gives effect to the time frames set out in Rule 3002(c) for the timely filing of proofs of claim; it gives effect to the presumption of validity accorded to timely filed claims by § 502; and it gives effect to the Bankruptcy Code's allocation of the burden of objecting to a timely filed and presumptively valid claim.  It also serves the purpose of insuring that the secured claims of home mortgage creditors are not impermissibly modified in contravention of § 1322(b)(2) and that the cure amounts in the plan are in compliance with § 1322(e).

## C.  The Court's Duty Is to Read the Different Sections of the Bankruptcy Code in Harmony

Debtor's position is based upon arguing that Congress has created irreconcilable inconsistencies between various provisions of the Bankruptcy Code and the Rules.  Debtors argue that, since the different provisions cannot work together as written, the Court must choose

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

a set of provisions to which it must give priority. In the Debtors' view, the entire claim filing, objection and allowance process set out in § 501 et seq. of the Bankruptcy Code and in Rule 3001 et seq. must be jettisoned as unworkable in light of chapter 13's confirmation provisions and particularly, the *res judicata* effect of plan confirmation under § 1327. But, of course, neither the parties nor the courts are free to pick and choose which provisions of the Bankruptcy Code and the Rules to observe and which to ignore.

It is this Court's duty to construe different provisions of the Bankruptcy Code in harmony with one another and not in contradiction. It is a "basic canon of statutory construction that different provisions of the same statute normally should be construed consistently with one another."[10] Even when a court is confronted with the original statute and later amendments, "the normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole. [The courts] should give each as full a play as possible."[11]

The issue currently before the Court was brought to light by the amendments to the Bankruptcy Code contained in BAPCPA. But the issue was not created by BAPCPA. Prior to its enactment, a plan could be confirmed prior to the proof of claim deadlines. In this district, and perhaps in others, that simply happened infrequently because BAPCPA added a provision to the Bankruptcy Code that dictates a court may hold a confirmation hearing no earlier than 20 days after the § 341 creditors meeting but *no later than 45 days after* the creditors meeting.[12]

The Court finds no irreconcilable contradiction between a speedy chapter 13 plan confirmation and the claim allowance process set out in §§ 501 and 502. Nothing in chapter 13 prevents the Court from confirming a chapter 13 in accordance with the accelerated time frame that was part of the BAPCPA amendments without cutting off a creditor's right to receive payment based on a timely filed and allowed proof of claim.

---

[10]*Emples. of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 290 (1973).

[11] *Markham v. Cabell*, 326 U.S. 404, 411 (1945) (construing the Trading With the Enemy Act, first enacted in 1916, as amended by the First War Powers Act, enacted in 1941); *see, also, Clark v. Uebersee Finanz-Korporation, A.G.*, 332 U.S. 480, 488 (1947) ("Our task is to give [the original statute and its amendments] . . . the most harmonious, comprehensive meaning possible.").

[12] 11 U.S.C. § 1324(b).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

### D.  The Court's Form Plan with Section VIII Does Not Exceed its Rule-Making Authority Because It Does Not Violate 11 U.S.C. § 1329

Debtors argue that the Court has exceeded its rule-making authority in violation of 28 U.S.C. § 2071 and FED. R. BANKR. P. 9029.  Section VIII of the Form Plan commits a debtor to modify a confirmed plan if necessary to make payment under the plan consistent with timely filed allowed claims that are filed after confirmation of the debtor's plan.  Debtors argue that Section VIII violates substantive rights granted to them by statute and exceeds this Court's rule-making authority.  They point to the language of § 1329, the Bankruptcy Code section that permits modification of a confirmed chapter 13 plan.  It says in relevant part: "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, *upon request of the debtor, the trustee, or the holder of an allowed unsecured claim* . . . ."[13]  Debtors reason that the modification requirement in Section VIII is tantamount to the Court moving for modification under § 1329.  Since the Court is not enumerated in § 1329(a) among those parties who may request modification of a confirmed plan, Section VIII violates § 1329(a).  Therefore, according to the Debtors' logic, for the Court to require a debtor to include Section VIII in a plan exceeds the Court's rule-making authority.  That is a position that has been adopted by another division of this bankruptcy court.[14]

This Court must respectfully disagree.  It is incumbent upon bankruptcy courts to avoid confirming chapter 13 plans that do not comply with the Bankruptcy Code.  Absent a debtor's Section VIII commitment to conform plan treatment to allowed claims following the bar date, the Court will confirm plans that, by way of example, impermissibly modify the rights of mortgage creditors in violation of § 1322(b)(2) because those creditors are not required to file their claims prior to plan confirmation.  Mortgage creditors will frequently be subjected to confirmed plans that unilaterally and summarily modify their rights absent debtors' commitment to modify their plans to conform to the secured creditors' timely filed claims.  Such confirmations constitute legal error.[15]  If the Court discovers such an erroneous confirmation following the bar date, there is nothing in § 1329's listing of parties who may file motions to modify that relieves the Court of its obligation to insure that the plans it confirms are in full compliance with the Bankruptcy Code; or that strips it of the power to carry out that obligation.  In the case of *Marrama v. Citizens Bank of Massachusetts*, the Supreme Court observed that the

---

[13] 11 U.S.C. § 1329(a) (emphasis added).

[14] *In re Gordon*, Case No. 10-13885 EEB, (Bankr. D. Colo. March 25, 2011).

[15] *See Espinosa*, 130 S.Ct. at 1379-80 (Even though the student loan creditor did not object to the debtor's plan, containing a provision that discharged a portion of the debtor's student debt, it was legal error for the bankruptcy court to confirm the plan because it violated the Bankruptcy Code provision that required the Court to make a finding of undue hardship.).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

Bankruptcy Code gives the Court "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process' . . . ."[16]  That authority is granted by 11 U.S.C. § 105(a), which reads as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  *No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.*[17]

Bankruptcy courts are circumspect in exercising powers under § 105(a).  "[T]he powers granted by [§ 105(a)] may be exercised only in a manner consistent with the provisions of the Bankruptcy Code.  That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law . . . ."[18]

In this case, it is the second sentence of § 105(a) that is applicable.  That sentence is narrowly focused and sets forth a rule of construction concerning those Bankruptcy Code sections, similar to § 1329, that provide "for the raising of an issue by a party in interest . . . ."[19]  Simply put, where action is necessary to "enforce or implement court orders or rules, or to prevent an abuse of process,"[20] § 105(a) unambiguously instructs bankruptcy judges that they are not constrained from so acting because a Bankruptcy Code section appears to limit who may raise an issue.  Bankruptcy judges may – and certainly *should* – act to insure that court rules and orders are adhered to and to prevent abuse of process regardless of whether a party in interest raises the issue.

Section VIII is intended to prevent the use of a chapter 13 plan to accomplish ends that are specifically prohibited under the Bankruptcy Code.  Such use of the chapter 13 process and

---

[16] 549 U.S. 365, 374-75 (2007) (quoting 11 U.S.C. § 105(a)).

[17] 11 U.S.C. § 105(a) (emphasis added).

[18] *U.S. v. Sutton*, 786 F.2d 1305, 1307-1308 (5th Cir. 1986).  *See also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S. Ct. 963, 968-69 (1988).

[19] 11 U.S.C. § 105(a).

[20] *Id.*

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

of this Court is an abuse of process.[21]  Moreover, Section VIII creates no new substantive rights not already provided for in the Bankruptcy Code.

Thus, even if the Court accepted the Debtors' premise that Section VIII is tantamount to the Court moving for a plan modification under § 1329, the Court may surely do so when to refrain from so acting would be to sanction a misuse of the Bankruptcy Code.  But the Court does not accept the Debtors' premise.

In addition to dictating the standards applicable to plan modifications, § 1329 controls who may initiate the *judicial* process to modify the debtor's plan.  Rule-making, however, "is *nonjudicial* in the sense that rules impose standards of general application divorced from the individual fact situation which ordinarily forms the predicate for judicial action."[22]  The effect of the Section VIII language is to make it a condition to confirmation of a chapter 13 plan that the Debtor make provision for either objecting to timely filed allowed claims that are inconsistent with the plan or modify the plan to provide for those claims.  Far from representing judicial overreaching, the plan language approved by all of the bankruptcy judges of this district represents the balance the bankruptcy court is required to strike between the accelerated plan confirmation process required by BAPCPA and giving full force and effect to the claim allowance process set out in the Bankruptcy Code along with the claim filing time frames mandated by the Rules.

The district's bankruptcy judges promulgated the Form Plan, including Section VIII, pursuant to the bankruptcy court's rule-making authority under 28 U.S.C. § 2071 and FED. R. BANKR. P. 9029.  Section 2071 provides that "[t]he Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business.  Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of [Title 28]."[23]  The Form Plan and Section VIII are not inconsistent with the Bankruptcy Code and the Rules.  To the contrary, if the Court were to adopt the system proposed by the Debtors, the Court would find itself promulgating rules and adopting procedures

---

[21] The Restatement defines abuse of process as use of "a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . " RESTATEMENT OF TORTS § 682 (1977).  "The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  *Id.* cmt. a.

[22]  *Mistretta v. U.S.*, 488 U.S. 361, 392 (1989) (emphasis added).

[23] 28 U.S.C. § 2071(a).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

that are quite inconsistent "with Acts of Congress and rules of practice and procedure prescribed under section 2072 of [Title 28]."[24]

The Court's rule-making authority allows it to regulate the practice and procedure before the Court. The Debtors argue that the Court has gone beyond the regulation of practice and procedure and has affected their substantive rights. A procedural rule is "designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes."[25] The test for whether a rule falls within a court's procedural rule-making authority is "whether a rule really regulates procedure, – the judicial process for enforcing rights and duties recognized by substantive law . . . ."[26] The test cannot simply be whether a rule may have some effect on the substantive outcome. "Undoubtedly most alterations of the rules of practice and procedure may and often do affect the rights of litigants. Congress' prohibition of any alteration of substantive rights of litigants was obviously not addressed to . . . incidental effects . . . ."[27] Thus, application of a court rule may well determine the outcome of the dispute without effecting any change to the substantive law applicable to the case.[28]

An area of law where the distinction between the procedural and the substantive is well developed involves application of the *Erie* doctrine. Under *Erie R.R. v. Tompkins*[29] the substantive law to be applied by federal courts sitting in diversity is applicable state law "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress . . . ."[30] However, the federal courts are free to apply federal procedural law.[31]

---

[24] *Id.*

[25] John Hart Ely, *The Irrepressible Myth of Erie*, 87 HARV. L. REV. 693, 724 (1974).

[26] *Hanna v. Plumer*, 380 U.S. 460, 464 (1963) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)).

[27] *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 445 (1946) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 11-14 (1941)).

[28] *Hanna*, 380 U.S. at 468.

[29] 304 U.S. 64 (1938).

[30] *Id.* at 78.

[31] *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 877 (10th Cir. 2006) (quoting *Hanna*, 380 U.S. at 465) ("Collectively, the 'broad command' flowing from these cases requires federal courts 'to apply state substantive law and federal procedural law.'").

Page 9

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

In the case of *Hanna v. Plumer*[32] the Supreme Court addressed the difference between court procedure and substantive rights.  *Hanna* was a diversity case where the Supreme Court decided that FED. R. CIV. P. 4, governing service of process, is a procedural rule that is in full compliance with the Rules Enabling Act and the Constitution.[33]  The issue was whether the plaintiff was required to serve process under state law or whether it was permitted to use the federal rules governing service.  The plaintiff had followed the federal rules and effected service by leaving the complaint and summons with the defendant's wife at their dwelling.[34]  But state law required personal service upon the defendant.  The district court granted summary judgment in favor of the defendant, finding that service was inadequate due to the plaintiff's failure to effect service in accordance with applicable state law.[35]  The First Circuit Court of Appeals affirmed, finding "that the conflict of state and federal rules was over 'a substantive rather than a procedural matter' . . . ."[36]

The Supreme Court reversed.[37]  It recognized that its decision affected the outcome of the case and the rights of the parties.[38]  The difference between application of state law or the federal rules made the difference between dismissal of the action or the ability of the district court to decide the merits of the dispute.  However, the Supreme Court reversed the lower courts because it also found that application of the federal rule rather than the state rule for service of process did not alter the substantive rules of decision applicable to the underlying dispute.[39]  The court observed that "adherence to the state rule would have resulted only in altering the way in which process was served.  Moreover, it is difficult to argue that permitting service of defendant's wife

---

[32] 380 U.S. 460 (1965).

[33] *Id.* at 464.

[34] *Hanna*, 380 U.S. at 461.

[35] *Id.* at 462.

[36] *Id.* at 462-63 (quoting *Hanna v. Plumer*, 331 F.2d 157, 159 (1964)).

[37] *Id.* at 474.

[38] *Id.* at 468 ("The difference between the conclusion that the Massachusetts rule is applicable, and the conclusion that it is not, is of course at this point 'outcome-determinative' in the sense that if we hold the state rule to apply, respondent prevails, whereas if we hold that Rule 4(d)(1) governs, the litigation will continue.").

[39] *Id.* at 469.

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

to take the place of inhand service of defendant himself alters the mode of enforcement of state-created rights . . . ."[40]

Similarly, the Local Rules' requirement to use the Form Plan with Section VIII hardly affects the Court's decision on the merits of a claim dispute. The substantive rules of decision, under the Bankruptcy Code, that guide the Court in its determination of the validity and amount of a creditor's claim are wholly unaffected. The effect of the rules requiring debtors to use the district's Form Plan, containing the Section VIII language, is to require a debtor to either prevail on a substantive objection to the creditor's claim or to conform the plan to timely filed and allowed proofs of claim. Far from altering the substantive law, Section VIII gives effect to the substantive law appearing in §§ 501 and 502. It does so consistent with the Rules by giving full effect to the Rule 3002's time frames without offending the requirements under §§ 1322 and 1325 for proposing and confirming a chapter 13 plan. Contrary to Debtors' argument, Section VIII facilitates the debtors' and the creditors' ability to have chapter 13 plans timely confirmed and provide for the proper claim amounts. The Court's obligation to read different sections of the Bankruptcy Code in harmony with one another requires it to observe procedures that fully respect the provisions for plan confirmation and claim allowance.

## E.  The Form Plan and Section VIII Do Not Conflict with the *Res Judicata* Effect of a Confirmed Chapter 13 Plan

It is the Debtors' position that Section VIII violates the principle of *res judicata* and compromises the finality of a chapter 13 plan confirmation. The short answer is that it is the *contents of a confirmed plan* that is binding on the Debtors and their creditors under § 1327. Where the plan commits the Debtors to reconcile their plan with the actual allowed claims following the lapse of the claim filing deadlines, that obligation is made binding by the confirmation order. In reality, here the Debtors' seek to avoid the *res judicata* effect of a plan that commits them to harmonize their payments under their plan to timely filed and allowed proofs of claim.

Moreover, by not giving full effect to the Bankruptcy Code's claims allowance process, the Court incurs a heightened risk – indeed the virtual certainty – that it will confirm plans that do not comply with other provisions of the Bankruptcy Code. That issue brings into focus the

---

[40] *Id.*

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

much discussed Tenth Circuit case of *Andersen v. UNIPAC-NEBHELP (In re Andersen)*[41] and
the more recent Supreme Court case of *United Student Aid Funds, Inc. v. Espinosa.*[42]

     *1) Espinosa and Andersen*

     The cases are similar.  They both arise in the context of chapter 13 plans.  In both cases,
the debtors proposed plans that affected their student loan indebtedness.  In *Andersen*, the debtor
treated the student loan debt as a general unsecured debt and included language to the effect that
confirmation of the plan would constitute a finding of undue hardship under 11 U.S.C.
§ 523(a)(8) and render the indebtedness dischargeable.[43]  In *Espinosa*, the debtor's plan provided
payment for the full principal balance of the student loan indebtedness and stated that the interest
portion of the debt would be discharged.[44]

     The plans in both *Andersen* and *Espinosa* were confirmed and both debtors completed
payments under the plans and received discharges.  The affected creditors in both cases sought to
collect their debts following completion of the debtors' plans.  The procedural routes to ultimate
review differed somewhat but the courts in both cases – the Tenth Circuit in *Andersen* and the
Supreme Court in *Espinosa* – found that confirmation of each plan was *res judicata* and the
student loan debt was discharged notwithstanding that, under § 523(a)(8), education loan
indebtedness may not be discharged without filing an adversary action seeking a determination
of undue hardship.  In the Supreme Court's *Espinosa* opinion, it abrogated the Tenth Circuit's
holding in *In re Mersmann*,[45] which had overruled *Andersen*.[46]  These cases highlight a
continuing problem in chapter 13 practice – the confirmation of chapter 13 plans that violate the
Bankruptcy Code and the Rules.  In the student loan context, the *Mersmann* court referred to the
practice as "[d]ischarge-by-declaration."[47]

     In abrogating *Mersmann*, *Espinosa* restored the Tenth Circuit's *Andersen* opinion to full
vigor.  But *Espinosa* contains an important and explicit caution to the courts that places the

---

    [41] 179 F.3d 1253 (10th Cir. 1999).

    [42] __ U.S. __, 130 S. Ct. 1367 (2010).

    [43] *Andersen*, 179 F.3d. at 1254.

    [44] *Espinosa*, 130 S. Ct. at 1374.

    [45] 505 F.3d 1033 (10th Cir. 2007).

    [46] *Id.* at 1051.

    [47] *Id.* at 1047.

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

Tenth Circuit's *Andersen* decision into its proper context.  In *Espinosa*, the Supreme Court spoke loud and clear to bankruptcy judges.  It said that § 1325(a) "*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue."[48] Otherwise, a court is simply turning a blind eye to plans that it knows to contain terms likely to violate the Bankruptcy Code and the Rules.  Among other authority, the Supreme Court cites to § 105(a) in support of its assertion that "bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan to the [applicable] requirements of [the Bankruptcy Code]."[49]

In light of the heavy volume of chapter 13 bankruptcy cases around the country,[50] bankruptcy courts face a daunting challenge to insure that they confirm only chapter 13 plans that are in full compliance with § 1325(a).  Courts use their rule-making authority under 28 U.S.C. § 2071 and FED. R. BANKR. P. 9029 to prescribe procedures that reduce the chances that they will confirm illegal plans.  Indeed, in the absence of a mechanism to pay the proper amount of the allowed claims when a plan is confirmed prior to the claims deadline, a plan that appears regular on its face may still violate the Bankruptcy Code because the statutorily prohibited treatment of a particular creditor is not apparent on the face of the plan.  The prime example of that concern is § 1322(b)(2)'s prohibition against the modification of a claim that is secured by the debtor's principal residence.[51]

Where the Debtor's statement of the arrearage amount, which appears in his initial chapter 13 plan, differs from the mortgage creditor's arrearage claim, the effect of Section VIII is that the Debtor must conform his plan to the creditor's amount or demonstrate that his figure is correct by prosecuting a claim objection.  If the Court were to allow debtors to nullify the Section VIII language, it would do so knowing that it will inevitably confirm plans that violate § 1322(b)(2).  Whenever a timely mortgage claim is filed following plan confirmation – an event that can routinely occur – and the arrearage amount in the claim is greater than the plan's arrearage figure, § 1322(b)(2) has been violated.  But, in *Espinosa*, the Supreme Court cautions

---

[48] *Espinosa*, 130 S. Ct. at 1381 n.14 (emphasis in original).

[49] *Id*. at 1381.

[50] In the District of Colorado alone, there were 5,336 chapter 13 bankruptcy case filed in 2010.

[51]     Subject to subsections (a) and (c) of [§ 1322], the plan
        may . . . modify the rights of holders of secured claims, *other than
        a claim secured only by a security interest in real property that is
        the debtor's principal residence*, or of holders of unsecured claims,
        or leave unaffected the rights of holders of any class of claims . . . .
11 U.S.C. § 1322(b)(2) (emphasis added).

Page 13

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

that bankruptcy judges are *required* to correct defects in a debtor's plan.  Without the ability, through its rule-making authority, to require the plan proponent to reconcile his plan with the timely filed allowed mortgage claim, a court must content itself with cleaning up the mess after the inevitable improper confirmation has occurred.

*2) Res Judicata*

The many judicial decisions that recognize the *res judicata* effect of a confirmed chapter 13 plan – from *Espinosa* on down – are beside the point with respect to the issue currently before this Court.  Those cases arise in an entirely contrary posture to this case.  Commenting on a case in a similar pre-confirmation posture, the Court in *In re Mammel*[52] observed: "[f]ortunately, the potentially troublesome provision in this case was identified before confirmation. This allows an unrestricted examination of the merits of the provision unfettered by res judicata issues."[53] *Espinosa* and similar cases that deal with the *res judicata* effect of a confirmed plan arise after the damage has been done; after a plan has been confirmed containing illegal terms; and after the plan has become binding on the parties by operation of law due to the absence of an appeal or a timely motion for relief from judgment.  Many of those cases arise, as did *Espinosa* and *Andersen*, after the plans had been consummated and well after any relief under Rules 59 or 60[54] was possible.

The frequency with which those issues arise in the case law suggests the efficacy of using local rules and procedures that seek to keep the Court from finding itself in the position of being required to uphold its erroneous confirmation of plans containing terms that are contrary to the Bankruptcy Code.  It is through use of the Form Plan containing Section VIII that the Court seeks to avoid post-confirmation disputes such as those that arose in *Espinosa* and *Andersen*.

To the extent that Debtors suggest they seek to restore the district's procedures to a purer form of the *res judicata* doctrine by fixing all claim amounts at confirmation, the Court will restate the obvious.  It is the terms of the confirmed plan that are binding upon the parties.  The terms of the Form Plan have the effect of requiring a debtor to substantiate his version of a claim by prosecuting an objection to a timely filed and allowed claim where the proof of claim differs from the plan term; to conform the plan to the proof of claim; or to negotiate a resolution

---

[52] 221 B.R. 238 (Bankr. N.D. Iowa 1998).

[53] *Id.* at 240.  *See, also, In re Montoya,* 341 B.R. 41, 46 (Bankr. D. Utah 2006) ("Andersen, of course, is inapplicable in this case because the Court has not confirmed the Plan, so the doctrine of *res judicata* and the policy considerations supporting finality of judgments are inapplicable and unpersuasive.").

[54] Made applicable by FED. R. BANKR. P. 9023 & 9024.

Page 14

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

satisfactory to both parties.  That is the obligation that is binding upon debtors by operation of *res judicata* and § 1327 under the current Form Plan.

F.  By Eliminating Section VIII,  Debtors' Plan Violates 11 U.S.C. §§ 501 and 502, and FED. R. BANKR. P. 3002

The deadline for a mortgage creditor to file its proof of claim is "90 days after the first date set for the meeting of creditors called under § 341(a) of the Bankruptcy Code . . . ."[55]  But the court must conduct a hearing on confirmation of the debtor's plan "not later than 45 days after the date of the meeting of creditors under section 341(a) . . . ."[56]

Where the proof of claim, which may be timely filed after plan confirmation,[57] reveals that the plan did not provide for a cure of the full amount of the mortgage arrearage, and the court has confirmed a plan that does not contain a saving provision requiring the debtor to reconcile the plan to the allowed claim, the plan would illegally modify a claim secured by the

_____

[55]  FED. R. BANKR. P. 3002(c).  Rules 3001 and 3002 set forth the requirements for filing proofs of claim.  Recent amendments to these rules, which will become effective on December 1, 2011, increase the requirements with respect to supporting documents and information to be supplied with the proof of claim.  The new requirements are particularly relevant to mortgage claims and contain penalties for failure to fully comply.  In light of the new rules, the Court would expect that creditors will take greater advantage of their 90 day filing period in order to fully comply with the revised rules.

[56]  11 U.S.C. § 1324(b).

[57]  Not all confirmation hearings held in accordance with the time-frames set out in § 1324(b) result in confirmed chapter 13 plans. It is not unusual that an amendment to the debtor's initially proposed plan will be necessary before the plan may be confirmed.  Under the BAPCPA amendments, during 2010, the average time from case filing to plan confirmation was 102.5 days in this district.  Because the claim filing deadlines are measured from the first date set for the debtor's § 341 creditors meeting and those meetings generally occur around 40 days after the petition date, the deadline for filing non-governmental claims will typically fall approximately 130 days following the filing of the petition. The result is that plans are routinely confirmed prior to the claim filing deadline.

debtor's principal residence in contravention of § 1322(b)(2).[58]  The teaching of *Espinosa* is that the bankruptcy court has committed reversible error if it confirms such a plan.[59]

Debtors would address this concern by establishing the rule that a creditor whose claim is incorrectly listed in the Debtor's plan must object to plan confirmation or be prohibited from asserting a right to payment of its true claim even if the claim was timely filed.  Debtors would thus abrogate the claim filing, objection and allowance process set out in §§ 501 and 502 of the Bankruptcy Code and Rule 3001 et seq.  They would have the Court cut off the time frames for filing proofs of claim set out in the Rules and noticed out to creditors in the Court's *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, and Notice of Hearing on Confirmation of Chapter 13 Plan*, which the Court issues upon the commencement of a chapter 13 case.  Finally, they seek to reverse the allocation of burdens set out in the Bankruptcy Code and the Rules as between debtors and claimants.  The Court finds nothing in § 1327's provisions concerning the *res judicata* effect of plan confirmation that should mandate such a result.

Initially, the Court will observe that it routinely confirms chapter 11 plans where the debtor-in-possession carries on the process of objecting to proofs of claim following plan confirmation.  Section 1141 is similar to § 1327.  It provides that "the provisions of a confirmed plan bind the debtor, . . . any entity acquiring property under the plan, and any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."[60]  The Court is unaware of arguments in the chapter 11 context that plan confirmation should cut off the orderly claim allowance process set out in the Bankruptcy Code and the Rules.  That is due to the fact that most chapter 11 plans provide for the claim allowance process to resolve claim validity or amount disputes and that

---

[58] Several factors affect a debtor's ability to accurately estimate the amount necessary to cure a mortgage arrearage.  Where a debtor has fallen behind in mortgage payments, but foreclosure proceedings have not been commenced, it is somewhat easier to estimate the total of missed payments, interest and late charges than it is after the creditor has started the foreclosure process and has incurred legal fees that may be added to its arrearage claim.  In the Court's experience, especially where the default extends over several months, a debtor's admitted estimate may be several thousand dollars below the creditor's arrearage claim.

[59] Certainly, the primary responsibility lies with the debtors and their counsel.  Counsel who knowingly submits a plan that modifies the mortgage claim may well run afoul of FED. R. BANKR. P. 9011.  *Espinosa*, 130 S. Ct. at 1382 ("Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings.") (quoting *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992)).  But the Court cannot shirk its responsibility by maintaining a state of willful blindness.

[60] 11 U.S.C. § 1141(a).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

provision becomes *res judicata* upon plan confirmation.  Debtors have not convinced the Court that chapter 13 should be treated as a special case in that respect.

Under § 501, a creditor may file a proof of claim.  Under § 502, the creditor's claim is "deemed allowed, unless a party in interest . . . objects."[61]  Rule 3001 provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."[62]  Rule 3007 sets out a detailed procedure for objecting to the allowance of a claim.[63]

The Debtors' notion that the Bankruptcy Code's claims process should be cut off by chapter 13 plan confirmation turns the claim allowance process on its head.

### 1) Debtors Seek to Abrogate FED. R. BANKR. P. 3002(c)

Debtors' Plan cuts off the time for filing claims contained in Rule 3002(c) and noticed out to creditors by the Court.  Upon the filing of a chapter 13 case, the Clerk of the Bankruptcy Court issues the *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, and Notice of Hearing on Confirmation of Chapter 13 Plan*.  The deadlines for creditors to file proofs of claim are among the deadlines contained in that notice and those deadlines are based on Rule 3002(c).  It would be disingenuous and misleading of the Court to mail such a notice to all creditors with certain knowledge that the claim filing time-frames will be cut short by plan confirmation.  Moreover, those deadlines are considered so important that they are among the deadlines that a court is prohibited from reducing under Rule 9006(c)(2).  A plan that cuts those deadlines short renders Rule 3002(c) and the Court's notice based on that rule meaningless.  It allows a debtor to reduce the very same proof of claim deadlines that a court is prohibited from reducing under Rule 9006(c)(2).

---

[61] 11 U.S.C. § 502(a).

[62] FED. R. BANKR. P. 3001(f).

[63] FED. R. BANKR. P. 3007.

Page 17

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

*2) Debtors Seek to Shift the Claim Objection Burden to Creditors*

Manifestly, under the Bankruptcy Code and the Rules, it is the burden of a debtor (or other party in interest) to object to a proof of claim filed by a creditor or interest holder.[64]  It is not the privilege of the debtor, in the first instance, to file a claim on behalf of the creditor and oblige the creditor to object or be bound.  The Bankruptcy Code and the Rules address when that right accrues to the debtor.  Under § 501, "If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim."[65]  Rule 3004 states that such proof of claim may be filed within 30 days following the deadline for filing claims.[66]  Thus, the right to file a claim on behalf of a creditor does not accrue to the debtor unless the time for the creditor to file its claim under Rule 3002(c) has expired.  Only then may a debtor file a proof of claim and only then may allowance of the creditor's claim be based upon a submission by the debtor.

A consequence of the burden shift advocated by the Debtors is that it obliges the creditor to engage counsel to do nothing more than assert its claim.  Because a corporate entity may not file pleadings and appear in a case without the benefit of counsel,[67] Debtors would have a creditor hire an attorney to do nothing more than defend against a debtor's *estimate* of the creditor's claim amount.[68]  By contrast, all creditors are permitted to file their claims without the

---

[64] *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) ("the Code and the Rules clearly impose the burden of placing the claim in dispute on any party in interest desiring to do so by means of filing an objection."); 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."); FED. R. BANKR. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

[65] 11 U.S.C. § 501(c).

[66] FED. R. BANKR. P. 3004.

[67] *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) (citing *Osborn v. President of Bank of U.S.*, 22 U.S. 738 (1824)); *see also Flora Construction Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413 (10th Cir. 1962) *cert. denied*, 371 U.S. 950 (1963) (*reh'g denied*, 373 U.S. 919 (1963)).

[68] Ironically, in the case of most secured claims, this expense is likely to be transferred to the debtor because the creditors' deeds of trust and other security instruments invariably allow the creditor to add such legal costs to the principle of the debt and those costs become a lien against the debtor's property.

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

assistance of an attorney.[69]  The claim process set up by the Bankruptcy Code, which Debtors seek to abrogate, requires a debtor or other interested party to object to a creditor's claim.  Only if a objection has been filed, should a creditor be obliged to engage counsel to litigate the dispute.

The Court concludes that it cannot confirm any plan containing language that summarily and unilaterally purports to cut short any creditor's right to timely file a proof of claim under § 501 and Rules 3001 and 3002; that purports to deny a claimant Rule 3001(f)'s evidentiary effect of *prima facie* validity; and that purports to deny a claimant § 502's provision that a claim that is filed in accordance with the Bankruptcy Code is deemed allowed unless objected to.

Even if the Court believed that it has the authority to truncate the time periods for filing proofs of claim granted to creditors by the Bankruptcy Rules, the practical effect of such a local practice could not be what was envisioned by the drafters of the Federal Rules of Bankruptcy Procedure.  Against the backdrop of BAPCPA and in the process of making extensive changes to the Rules required by BAPCPA, it appears to have been the judgment of Congress[70] that 90 days from the first date set for the § 341 meeting of creditors was a fair time period for consumer creditors to file proofs of claim.  By contrast, in this district, objections to chapter 13 plans must be filed by three days prior to the § 341 meeting of creditors.[71]  Since the allowed 90 days for filing of claims begins to run at the § 341 meeting of creditors, objections to the plan are due before the 90 days has even started to run.[72]  The time for filing claims would be completely nullified if a creditor were compelled to file a plan objection to do nothing more than seek an adjudication of the amount of its claim.

---

[69] *In re Hart*, 80 B.R. 107, 110 (Bankr. E.D. Tenn. 1987).

[70] The Supreme Court has the power to prescribe the rules of practice and procedure in bankruptcy cases.  28 U.S.C. § 2075.  The Judicial Conference of the United States takes the laboring oar in drafting proposed rules.  28 U.S.C. § 2073.  Its proposed rules or rule changes are then transmitted to the Supreme Court, which, in turn, submits the rules to Congress for final approval.  28 U.S.C. § 2075.  Such proposed rules take effect on December 1 of the year submitted if Congress has not enacted legislation to reject, modify or defer them.  *Id.*

[71] L.B.R. 3015(e).

[72] Future revisions to the Local Bankruptcy Rules could relax the objection deadline applicable to chapter 13 plans filed in this district.  The BAPCPA requirement for accelerated plan confirmation, however, dictates that plan objections must continue to be filed far in advance of the due date for proofs of claim.

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

Certainly, where the debtor's proposed *treatment* of the creditor's claim is not to its liking, the creditor must object or risk being bound by the plan's provisions.  But it should not be required to file an objection going to those aspects of its claim that are deemed allowed under § 502(a) upon the timely filing of its proof of claim – "the validity and amount of the claim."[73] Such a requirement collapses claim allowance and confirmation of a plan's treatment of claims into a single process.  The separate claim allowance process provided for in the Bankruptcy Code and the allowed time periods for filing claims that diverge sharply from the time periods applicable to plan confirmation argue against any such reading of the Bankruptcy Code and applicable Rules.  Furthermore, the fact that Congress did not see fit to adjust the proof of claim filing deadlines in the process of the extensive rule revisions necessitated by BAPCPA is a strong indication that it perceived no contradiction between speedy confirmation and the existing claim allowance process.

G.  Other Language

As the Court notes above, the Debtors' plan is unconfirmable on its face due to its non-compliance with the Local Rules.  The Court gave Debtors an opportunity to present argument why their Plan may be confirmed, notwithstanding the Debtors' non-compliance with the Section VIII language in the Form Plan.   In their brief, Debtors also discuss additional language that they have added in Section V.G. of the Form Plan.

Section V of the Form Plan is labeled as "Other Provisions."  It is the section in which debtors are allowed to set out additional provisions including payments to be made directly to creditors; the plan effective date; the order of distribution; motions to avoid liens under § 522(f); student loan obligations and restitution obligations.  Section V.G. allows the debtor to list "Other" provisions.  As the Debtors point out, they have inserted language in Section V.G. that is directly contradictory of the Section VIII obligation to conform their plan to the allowed proofs of claim. The Court agrees with the Debtors that it cannot consider the Debtors' alteration to the Form Plan in Section VIII without also considering the language the Debtors have inserted into Section V.G.

Specifically, Section V.G.3. of Debtor's Plan includes the following language:

Note to any creditor holding a deed of trust secured by the Debtor(s)'s real property: the proposed plan provides for the Debtor(s)'s best estimate of the mortgage arrears owed to your company (if applicable), as set forth in Class II(a). If you disagree with the amount provided, it is your obligation to file an objection

---

[73] FED. R. BANKR. P. 3001(f).

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

> to the plan. In the absence of an objection, the amount set forth in the plan is controlling, and will have a res judicata effect subsequent to the entry of the order of confirmation.[74]

Debtors' Chapter 13 Plan, Section V.G.3. (docket #2).

By insertion of this language, Debtors seek to nullify the operation of § 502(a), which provides that a timely filed claim is deemed allowed in the absence of an objection from a party in interest; and to avoid § 1322(b)'s prohibition against modifying their home mortgage in the event that their *estimate* of the mortgage arrears turns out to be less than the figure reflected on the creditors allowed claim.[75]  Because Section V.G.3. directly contradicts the required language in the Form Plan, the Debtors' Plan fails to comply with the Local Rules.

---

[74] This Court has previously approved similar language in the case of *In re Nelson*, 408 B.R. 394 (Bankr. D. Colo. 2008).  The creditor in that case objected "to language that provides confirmation of the . . . Plan will have a "res judicata effect," because such terms are surplus, not provided in the Bankruptcy Code, Rules or Forms, and seek to alter the rights of [the creditor] as set forth in 11 U.S.C. § 1327(a) and/or Fed.Rules. Bankr.Proc. 3015(g)."  Case No. 08-13629-HRT, docket #50.  The Court rejected the creditor's objection as stated because there is no question that confirmation of a chapter 13 plan has a *res judicata* effect.  At that time, the Court did not go beyond the issue raised by the creditor.

[75] In this particular case, the Debtors' Plan reflects no mortgage arrearage to be cured with respect to their principal residence and the first mortgage holder filed a proof of claim that indicated no arrearage on the mortgage payments.  Nor are there any allowed priority claims.  Thus, the Debtors' non-compliance with the Local Rules' Form Plan serves no purpose whatever.  That brings to light a troubling aspect of this controversy.  Some number of debtors' counsel insist on making these alterations to the Court's Form Plan in all cases that they file, regardless of whether their alterations have any practical effect in a given case.  In this case, the Court wonders how committed the Debtors themselves are to fighting this battle.  However, the Court is holding a number of other cases in abeyance pending its consideration of this case.  In some of those cases, the mortgage creditor's arrearage claim differs greatly from the debtor's plan provision.  In one case (*In re Nelsch*, 11-17615-HRT) the mortgage arrearage claim (filed prior to the initial confirmation hearing) is for $16,833.17 and the plan provides for no arrearage cure payment.  In another case (*In re Jones*, 11-23221-HRT) the mortgage arrearage claim (filed prior to the initial confirmation hearing) is for $18,028.13 and the plan provides for an arrearage cure payment of $4,235.00.  At minimum these cases may not be confirmed – regardless of the issue of non-compliance with the Local Rules – but they also raise the issue of whether or not the debtors involved have filed and prosecuted their plans in good faith.

Page 21

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

H.  The Practice In Other Districts

Debtors cite the Northern District of Texas as a jurisdiction that requires debtors to object to proofs of claim.  That district's General Order 2010-01, ¶8.d. provides that "Unless an objection is timely filed as to the amount or classification of any claim  . . . the claim . . . will be allowed or approved as described in the [Trustee's Recommendation Concerning Claims], and such amount and classification will be final and binding on all parties without further order of the Court."  Debtors suggest that the Northern District of Texas is an outlier in its procedures and that "such a local bankruptcy rule as it exists in Texas runs afoul of the intent of 1327, as it gives little meaning to a confirmed plan being a final order."  But the reality is contrary to the Debtors' suggestion.  Rules seeking to give full meaning to *both* § 1327 and the claims allowance process set out in the Bankruptcy Code and the Rules place the Northern District of Texas squarely within the majority of other districts in terms of their chapter 13 claim allowance rules.

In order to place this issue, as it has arisen in this district, into a proper context, the Court undertook to examine the local rules and chapter 13 plan forms from other districts.  It was a useful exercise.

By the Court's count, 59 of the 93 judicial districts have a positive indication in local rules or in local chapter 13 plan forms directing that distributions to creditors are made based on amounts appearing in allowed proofs of claim.  By contrast, the Court has identified 5 judicial districts where the plan form or rules contain a positive indication that claim amounts appearing in the confirmed plan will determine amounts of distributions instead of the proof of claim.  The Court assigned no classification to the remaining 29 judicial districts.  Of those 29 districts, 25 districts simply have no local rule that addresses the issue and no form plan that would allow the Court to assign a classification with any degree of confidence.  A few districts have plan language that the Court found ambiguous and the Court declined to assign any classification on that basis.

Some published cases have identified three approaches to the perceived conflict between the § 1327 binding effect of plan confirmation and the § 502 allowance of claims.[76]  As explained  above, the Court doubts the existence of any genuine conflict between plan confirmation and claim allowance.  But, more to the point, this characterization of the case law

_____

[76] *See, e.g., In re Shook*, 278 B.R. 815, 824 (B.A.P. 9th Cir. 2002); *In re Basham*, 167 B.R. 903, 905 (Bankr. W.D. Mo. 1994) ("As with most splits in opinion, there are three approaches, one at each extreme and one in between. Some courts choose the claims process over the plan confirmation process . . . ; some courts choose the chapter 13 plan process over the claims process . . . : and some courts choose a middle-of-the-road approach . . . .") (citations omitted).

gives a false impression of a more-or-less even division of opinion on the subject.  By examining the full range of procedures that are in use in the 93 judicial districts, it becomes apparent that any impression of an even "split" of opinion among the districts is illusory.

In the Court's experience, there seems to be no area of bankruptcy law practice that is more localized than chapter 13 practice.  Despite that fact, other judicial districts around the country are remarkably uniform in giving full recognition to the process set up in the Bankruptcy Code and the Rules for filing and allowing claims notwithstanding that chapter 13 plans are frequently confirmed prior to the expiration of the claim deadlines.  In an Appendix to this Order, the Court has listed the various jurisdictions the Court examined and the basis for the Court's classification.

### III.  CONCLUSION

The narrow issue before the Court is whether the Court may deny confirmation of the Debtors' chapter 13 plan on account of their failure to propose a plan in accordance with the district's Local Rules and Form Plan.  The Court concludes that it may deny confirmation of such a plan.  The Court rejects the Debtor's argument that Section VIII of the Court's Form Plan exceeds the Court's rule-making authority because it is contrary to the Bankruptcy Code.  The Court's L.B.R. 3015-1 and L.B.Form 3015-1.1 fall well within the Court's authority to establish rules regulating the practice and procedure before the Court.  Use of the prescribed procedures and forms for chapter 13 plans deprive no debtor of rights granted by the Bankruptcy Code nor do the Court's Local Rules or Form Plan alter the substantive rules of decision with respect to the confirmation of plans or the allowance of claims.  Indeed, the prescribed procedures and forms assure a balanced enforcement of parties' rights and fair application of substantive law respecting plan confirmation and claims allowance.

Whether or not a given district may choose to promulgate rules that conflate plan confirmation and claim allowance is a matter beyond the issue presented by this case.  The foregoing discussion makes clear the Court's view that the accelerated confirmation timetable under BAPCPA is easily balanced with the provisions appearing in the Bankruptcy Code and the Rules for claim allowance.  It seems far more plausible to the Court that the drafters of the Bankruptcy Code and of the Rules were well aware of the time-frames applicable to both processes and saw no conflict rather than that they chose to ignore a glaring conflict and leave it to the courts – through case law or local practice – to elevate one process over the other.

Debtors express their concerns in terms of finality.  They want the confirmation order to fully and finally determine all issues in the case.  But the Court believes the contrary result is the likely consequence of confirming a plan with no requirement to harmonize payments under the plan with allowed claims.  Domestic support obligation ("DSO") claims are nondischargeable.  Does confirmation of a plan that does not provide the full amount of the DSO claim help the Debtor obtain a fresh start?  Does confirmation of a plan that does not pay the full amount of the

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

priority tax claims operate to settle those claims or merely mean that the Debtor will emerge from chapter 13 owing nondischargeable tax debts? Won't funds that could have been used to pay nondischargeable priority claims be used to over-pay unsecured claims instead? Long term debts are not subject to a chapter 13 discharge. What does a debtor really gain by obtaining confirmation of a plan that pays less than the full amount of a mortgage arrearage? By what mechanism is the remaining arrearage discharged? The type of finality the Debtors seek seems far from final. It is more like a prescription for continuing litigation in place of a fresh start at plan completion.

The Form Plan is imperfect. The modification requirement appearing in Section VIII is one way of harmonizing BAPCPA's accelerated confirmation time-frame with the Bankruptcy Code provisions and Rules relating to allowance of claims. However, Section VIII is not the exclusive method of harmonizing those provisions and it may not be the best.[77] The way to improve the Court's rules and forms is through the rule-making process; not through a chaotic process of ad hoc rewriting – one plan at a time.

Experience has highlighted another problem with the Form Plan. Section V.G. of the Form Plan was intended to provide a measure of flexibility in those rare cases where a particular debtor's unique circumstances cannot be adequately provided for by the standard terms reflected in the Form Plan. But here, the Debtors' Section V.G. covers fully two and one-half single spaced pages of the Debtors' nine page Plan. In essence, Debtors' counsel has taken it upon itself to rewrite the Court's Form Plan without taking the time and the trouble to participate in the rule-making process or to suggest that such changes should be made as part of that process.

These are issues that are likely to engage the attention of the bankruptcy judges of the district in the near future.[78] The judges and the bankruptcy bar have now had a few years of experience operating under BAPCPA and the Local Rules that the BAPCPA amendments spawned. The bench and the bar should be able to use that experience to address the problem areas highlighted by this Order.

Finally, the Court will voice its support for the Judicial Conference efforts to craft a uniform national chapter 13 plan. The high volume of chapter 13 cases coupled with the high

---

[77] The most common approach that other districts use is to instruct the trustee – either through a local rule or as a plan term – simply to make distributions based on the amounts of allowed claims. Under a system such as that, there would be no need for a plan provision requiring a debtor to modify a plan to harmonize with the allowed claims.

[78] These matters are already the subject of an appeal to the district court. *In re Gordon*, No. 11-cv-00960-REB (D. Colo. filed April 11, 2011); *In re Pahs*, No. 11-cv-01340-REB (D. Colo. filed May 20, 2011).

Page 24

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

degree of similarity in the issues that are presented in these consumer cases lends itself to a uniform treatment.  The nature of consumer credit means that the majority of creditors appearing in chapter 13 cases are institutional creditors with national operations.  Such creditors receive plans proposed by debtors from all over the country that vary substantially from district to district in format, language and emphasis.  Chapter 13 is not merely a scaled down chapter 11 reorganization.  The difference between business debtors and consumer debtors is fundamental.  To employ plans that run to a dozen pages and allow debtors unlimited latitude to customize provisions adds complexity, with the attendant cost such complexity entails, to no useful purpose.  A streamlined and uniform national form chapter 13 plan would likely benefit debtors, creditors, trustees and certainly the courts.

In accordance with the foregoing discussion, it is

**ORDERED** that Confirmation of Debtors' *Chapter 13 Plan* (docket #2) is DENIED.  It is further

**ORDERED** that Debtors shall file an amended chapter 13 plan in compliance with this Order and the Court's Local Rules no later than October 11, 2011, failing which, this case will be dismissed without further notice or hearing.

Dated this ___20th___ day of September, 2011.

**BY THE COURT:**

_Howard R. Tallman_

Howard R. Tallman, Chief Judge
United States Bankruptcy Court

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

APPENDIX

| Circuit | State or Territory | District | |
|---------|-------------------|----------|---|
| | | | |
| 1 | Maine | | Local Rule 3015-3(d)(3) & Local Form 2, § 3(D) |
| 1 | Massachusetts | | Local Rule Appendix 1, Chapter 13 Rule 13-13(e)&(f) |
| 1 | New Hampshire | | Model Chapter 13 Plan, paragraph 11.B. |
| 1 | Puerto Rico | | Not addressed in rules; no local plan form |
| 1 | Rhode Island | | Chapter 13 Plan and Applicable Motions, section III.A. |
| 2 | Connecticut | | Not addressed in rules; no form chapter 13 plan |
| 2 | New York | Eastern | Not addressed in rules; no chapter 13 plan form |
| 2 | New York | Northern | LBR 3015-1(h) |
| 2 | New York | Southern | Model Chapter 13 Plan, category 2 (mortgage claims) & category 5 (priority) |
| 2 | New York | Western | Model Plan (Rochester Division) plan controls |
| 2 | Vermont | | Local Rule 3013-2. Classification of Claims & Interest – Chapter 13 |
| 2 | Virgin Islands | Bankr. Div. | Local Bankruptcy Rule 3015-2.B.  Plan classification and amount control only if no timely POC. |
| 3 | Delaware | | Appears the plan controls the amount of the claim to be paid |
| 3 | New Jersey | | Unclear. Plan references to allowed claims suggest that distributions made in accordance with proof of claim |
| 3 | Pennsylvania | Eastern | Not addressed in rules; no local plan form |
| 3 | Pennsylvania | Middle | Chapter 13 Model Plan, § 2.C. & § 3.A. |
| 3 | Pennsylvania | Western | Local Form Plan, General Principles Applicable to All Chapter 13 Plans |
| 4 | District of Columbia | | Chapter 13 Plan form –  no claim amounts listed in plan |
| 4 | Maryland | | Model chapter 13 plan, § 2.a.; § 2.d.; § 2.e.ii. |
| 4 | North Carolina | Eastern | Model Plan paragraph 5 (mortgage arrears); otherwise plan controls |
| 4 | North Carolina | Middle | Not addressed in rules; no chapter 13 plan form |
| 4 | North Carolina | Western | Not addressed in rules or plan form |
| 4 | South Carolina | | Chapter 13 Plan form provides that secured and priority creditors paid according to claims |
| 4 | Virginia | Eastern | Chapter 13 plan form provides for payment of "allowed claims" and debtor only enters "estimated" amounts |
| 4 | Virginia | Western | Chapter 13 plan form provides for payment of "allowed claims" and debtor only enters "estimated" amounts |
| 4 | West Virginia | Northern | Local Form Proposed Plan and Notice to Creditors; |

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

| | | | |
|---|---|---|---|
| | | | Trustee will pay allowed claims; plan reflects estimates only |
| 4 | West Virginia | Southern | Local Form E-2 Proposed Chapter 13 Plan; payments made on allowed claims; plan reflects estimates only |
| 5 | Louisiana | Eastern | LBR 2083-1 |
| 5 | Louisiana | Middle | Not addressed in rules or plan form |
| 5 | Louisiana | Western | Not addressed in rules / no form chapter 13 plan |
| 5 | Mississippi | Northern | Not addressed in rules; no chapter 13 plan form |
| 5 | Mississippi | Southern | Not addressed in rules; no chapter 13 plan form |
| 5 | Texas | Eastern | Local Rule of Bankruptcy Procedure 3015(g). |
| 5 | Texas | Northern | General Order 2010-01, ¶8.d. |
| 5 | Texas | Southern | Local Rule 3015-1(a)(4) |
| 5 | Texas | Western | Midland-Odessa Division, Standing Order for Chapter 13 Case Administration for the Midland Odessa Division, ¶3 |
| 5 | Texas | Western | San Antonio Division, Amended Standing Order Relating to Chapter 13 Practices in the San Antonio Division, ¶10. |
| 5 | Texas | Western | Austin Division, Standing Order for Chapter 13 Case Administration for Austin Division, ¶3 |
| 6 | Kentucky | Eastern | Model chapter 13 plan refers to estimated claim amounts |
| 6 | Kentucky | Western | Not addressed in rules / no form chapter 13 plan |
| 6 | Michigan | Eastern | Form Order Confirming Plan; *In re Senczyszyn*, 426 B.R. 250, 253-54 (Bankr. E.D. Mich. 2010) |
| 6 | Michigan | Western | Not addressed in rules; no chapter 13 plan form |
| 6 | Ohio | Northern | Canton Division – Administrative order 05-05 and Form Plan paragraphs 4, 5 & 8 |
| 6 | Ohio | Northern | Cleveland Division – Form Plan paragraph 2.C. |
| 6 | Ohio | Southern | Mandatory Form Plan refers to estimated claim and arrearage amounts |
| 6 | Tennessee | Eastern | Not addressed in rules or plan form |
| 6 | Tennessee | Middle | Model Plan form specifies "Scheduled Amt." for claim amounts and specifies that the plan does not allow claims. |
| 6 | Tennessee | Western | Local Form 2, Chapter 13 Plan, specifies "Approx arrearage" in mortgage section |
| 7 | Illinois | Central | No local rules and no local chapter 13 form plan |
| 7 | Illinois | Northern | Model plan provides that plan controls over proofs of claim |
| 7 | Illinois | Southern | Model chapter 13 plan refers to estimated claim amounts |
| 7 | Indiana | Northern | Not addressed in local rules; no form chapter 13 plan |
| 7 | Indiana | Southern | Model chapter 13 plan, paragraph (b) |
| 7 | Wisconsin | Eastern | Chapter 13 Plan provides trustee will pay allowed claims and plan reflects estimates of arrearage and priority claims |
| 7 | Wisconsin | Western | Chapter 13 Plan provides trustee will pay allowed claims |

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

| | | | |
|---|---|---|---|
| | | | and plan reflects estimates of arrearage and priority claims |
| 8 | Arkansas | Eastern | Not addressed in rules; no local form plan |
| 8 | Arkansas | Western | Not addressed in rules; no local form plan |
| 8 | Iowa | Northern | Not addressed in rules; no local form plan |
| 8 | Iowa | Southern | No local rules; no local chapter 13 form plan |
| 8 | Minnesota | | Model chapter 13 plan (specifies that POC controls on arrearage amounts and priority claims) |
| 8 | Missouri | Eastern | Local Rule 3015-2 |
| 8 | Missouri | Western | Local Rule 3084-1 |
| 8 | Nebraska | | Local Rule 3007-1 |
| 8 | North Dakota | | Not addressed in rules; no local forms |
| 8 | South Dakota | | Not addressed in rules or plan form |
| 9 | Alaska | | Chapter 13 Plan form; Local Rule 3015-1(b)(4)[B] |
| 9 | Arizona | | Chapter 13 Plan and Application for Payment of Administrative Expenses, ¶(C)(4); ¶(C)(6)(a); ¶(C)(6)(b) |
| 9 | California | Central | Local Rule 3015-1(j)(2) and Mandatory Chapter 13 Plan form |
| 9 | California | Northern | Oakland Division: Model Chapter 13 Plan for bankruptcy cases filed on or after October 17, 2005, ¶2 |
| 9 | California | Northern | San Francisco Division: Not addressed in rules or plan. |
| 9 | California | Northern | Santa Rosa Division: Not addressed in rules or plan. |
| 9 | California | Northern | San Jose Division: Pre-approved Chapter 13 Plan forms, ¶2 |
| 9 | California | Southern | Local Rule 3007-1 & 3013-1 and Form Chapter 13 Plan |
| 9 | Guam | Bankr. Div. | Not addressed in rules / no form chapter 13 plan |
| 9 | Hawaii | | Local Rule 3070-2 |
| 9 | Idaho | | Chapter 13 Plan form provides that allowed claim controls but provides opportunity for modification |
| 9 | Montana | | LBR 3001-4 |
| 9 | Nevada | | Model Chapter 13 Plan, paragraph 2.06 |
| 9 | Northern Mariana Islands | Bankr. Div. | Not addressed in rules; no form plan |
| 9 | Oregon | | Model Plan form 1300.05 refers to estimated debt and arrearage |
| 9 | Washington | Eastern | Local Form LF2083 Chapter 13 Plan. states that trustee will pay according to amt. stated on POC. |
| 9 | Washington | Western | Chapter 13 Plan form specifies that priority and secured claims to be paid only to filed and allowed claims |
| 10 | Colorado | | Chapter 13 Plan form – plan modification provision |
| 10 | Kansas | | Chapter 13 Model Plan, ¶7; ¶9.b.iii.; ¶9.c.ii.A) |
| 10 | New Mexico | | Chapter 13 Plan form, Local Rule 3070-1.1, Local Rule 3070-1.2 |

ORDER DENYING PLAN CONFIRMATION
Case No. 11-10545 HRT

| 10 | Oklahoma | Eastern | Local Form 3015-1(B) |
|----|----------|---------|----------------------|
| 10 | Oklahoma | Northern | Not addressed in rules; local form not available on-line. |
| 10 | Oklahoma | Western | Order Confirming Chapter 13 Plan, paragraph 2.c. & e. |
| 10 | Utah | | Local Rules Appendix G |
| 10 | Wyoming | | Chapter 13 Plan form provides that plan controls over proofs of claim |
| 11 | Alabama | Middle | Local Rule 3015-4 |
| 11 | Alabama | Northern | Not addressed in local rules or plan form |
| 11 | Alabama | Southern | Form Chapter 13 Plan directs trustee to pay "allowed claims for arrearages;" plan does not specify amount. |
| 11 | Florida | Middle | No chapter 13 rule; no form chapter 13 plan |
| 11 | Florida | Northern | Form Chapter 13 Plan provides that payment of arrearages under plan constitute full payment |
| 11 | Florida | Southern | Local Rule 2083-1 |
| 11 | Georgia | Middle | Not addressed in rules / no form chapter 13 plan |
| 11 | Georgia | Northern | Chapter 13 Plan form paragraph 3 |
| 11 | Georgia | Southern | Chapter 13 Plan form; amounts are estimates |